UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| ANDY EUGENE HENDERSON,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of the Social<br>Security Administration,<br><br>　　　　　Defendant. | Case No. EDCV 16-1995 AJW<br><br>MEMORANDUM OF DECISION |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

Plaintiff alleges disability beginning on November 27, 2012 due to post-traumatic stress disorder ("PTSD") and other mental impairments and limitations. [Administrative Record ("AR") 200]. In a June 16, 2016 written hearing decision that is the Commissioner's final decision, the Administrative Law Judge ("ALJ") found that plaintiff had severe impairments consisting of PTSD, depression, and anxiety that did not preclude him from work at any exertional level but that restricted him to simple, repetitive tasks and limited public contact. [AR 15-26]. Based on the testimony of a vocational expert, the ALJ determined

that plaintiff's residual functional capacity ("RFC") precluded performance of his past relevant work but did not preclude him from performing alternative jobs that exist in significant numbers in the national economy. [AR 24-25]. Accordingly, the ALJ found that plaintiff was not disabled at any time through the date of his decision. [AR 24-26].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld. Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

**Discussion**

Plaintiff contends that the ALJ failed to properly evaluate the medical opinion evidence of record, and in particular failed to give proper weight to the opinion of the consultative psychiatrist, Denise Joseph, M.D.

Plaintiff is a United States Army veteran who served tours of duty in Kuwait and Iraq. The Veterans' Administration ("VA") found plaintiff 100% disabled and unemployable effective September 24, 2013 due to a service-connected mental disorder with a primary diagnosis of PTSD. [See AR 176-179, 201, 224, 226]. After serving in the military, plaintiff was employed at a warehouse for several years until he lost that job due to charges that he was stealing from the company. Plaintiff's criminal case was heard by the Veterans' Court; he spent some time in custody, was placed on probation, and received court-ordered mental health treatment. [AR 19, 37-38, 55-56, 224-225, 265, 270]. Plaintiff testified that his case was referred to the Veteran's Court because the crime he committed was considered related to his service-

connected mental disability.[1] [AR 55, 265].

The ALJ rejected the VA disability rating on the grounds that the documents on which it was based were not part of the record, and that the VA rating was not consistent with substantial evidence in the record concerning plaintiff's mental functional abilities during the period under review. [See AR 23]. Plaintiff does not contend that the ALJ erred in rejecting the VA disability rating. See McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002) (holding that the ALJ "must ordinarily give great weight to a VA determination of disability" and must give "persuasive, specific, valid reasons" supported by the record for giving a VA disability determination less weight). Plaintiff argues, however, that the ALJ erred in giving greater weight to the non-examining source opinions than to the examining physician's opinion, which, plaintiff contends, is more consistent with the record as a whole, including plaintiff's treating source reports and the VA disability rating. [See JS 4-8].

Denise Joseph, M.D. examined plaintiff at the Commissioner's request in May 2015. [AR 358-364]. Dr. Joseph interviewed plaintiff, conducted a mental status examination, and reviewed a progress note from plaintiff's "readjustment counselor" at the VA that reported plaintiff's subjective history of anger and explosive outbursts. [AR 271, 358]. Plaintiff's chief complaints were anxiety, depression, anger outbursts, and insomnia. [AR 359]. Dr. Joseph diagnosed PTSD, generalized anxiety disorder, and major depressive disorder, recurrent, moderate. [AR 363]. Dr. Joseph opined that plaintiff was severely impaired in the ability to complete a normal workday or work week without interruptions resulting from psychiatric

---

[1] Veterans' Courts, also known as Veterans' Treatment Courts, offer

  alternatives to case proceedings that address underlying problems which contribute to criminal activity or other court involvement. Veteran Treatment Courts lead to the placement of as many mentally ill offenders who are veterans of the U.S. military, including those with PTSD, . . . substance abuse, or any mental health problem, in VA counseling and treatment programs. In many cases, counseling is required and incorporated into the treatment programs that are designed to treat the underlying psychological disorders. Participating veterans are ordered to complete the recommended treatment plan and comply with any other terms and conditions of probation imposed by the court.

California Department of Veterans' Affairs CalVet website, Veterans Treatment Court, available at https://www.calvet.ca.gov/VetServices/Pages/Veterans-Treatment-Court.aspx (last visited Aug. 1, 2017).

conditions because he "is hypervigilant, tense, anxious, impatient, and has anger outbursts." [AR 364]. Plaintiff was "moderately impaired" in his ability to perform detailed and complex tasks, perform work activities on a consistent basis, work without special or additional supervision, relate and interact with co-workers and the public, and deal with the usual stresses encountered in a competitive workday. Plaintiff was "not impaired" in the ability to perform simple, repetitive tasks and maintain regular attendance. [AR 364].

The non-examining state agency medical consultants concluded that plaintiff's mental limitations ranged from "none" to "moderate," including a moderate limitation in his ability to complete a normal workday and work week. Overall, they opined that plaintiff was able to sustain concentration, persistence, and pace for simple tasks with no public contact. [AR 67-78, 80-90]. At the initial level of review, Margaret Pollack, Ph.D. rejected Dr. Joseph's finding that plaintiff was severely limited in his ability to complete a normal workday or workweek, explaining that this restriction "appears excessively restrictive, particularly given [plaintiff's] ability to attend classes at school." She also noted plaintiff's "unremarkable" mental status findings. [AR 72]. On reconsideration, psychiatric medical consultant Ida Hilliard, M.D. affirmed the initial determination. [AR 84-85]. The ALJ credited the non-examining source opinions and rejected Dr. Joseph's more restrictive assessment. [See AR 22-23].

If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan v. Halter, 242 F.3d 1144, 1148-1149 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). The opinion of a non-examining physician normally is entitled to less deference than that of an examining and treating physician precisely because a non-examining source does not have the opportunity to conduct an independent examination and does not have a treatment relationship with the claimant. See Andrews v. Shalala, 53 F.3d 1035, 1040-1041 (9th Cir. 1995). A non-examining physician's conclusion, "with nothing more, does not constitute substantial evidence, particularly in view of the conflicting observations, opinions, and conclusions of an examining physician." Erickson v. Shalala, 9 F.3d 813, 818 n. 7 (9th Cir. 1993) (emphasis omitted) (quoting Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1990)).

The ALJ's reasons for giving Dr. Joseph's opinion less weight than the opinions of the state agency

medical consultants are neither legitimate nor based on substantial evidence.

The ALJ observed that Dr. Joseph's mental status examination findings were normal except for a depressed, anxious mood and a depressed, anxious, and constricted affect. [AR 23]. That observation is correct but falls short of being a legitimate reason for discrediting Dr. Joseph's opinion. Dr. Joseph did not rely solely on plaintiff's mental status examination results, but also on plaintiff's subjective history of anger, angry outbursts, and hypervigilance, which plaintiff reported both to her and to his treating counselor at the VA. [AR 358-359]. Dr. Joseph reasonably relied, in part, on plaintiff's subjective symptoms because she found him to be a "a reliable historian" who appeared "genuine and truthful," and because she reviewed a VA treating source report that accepted plaintiff's subjective symptoms of "anger control problems" as credible. [AR 271, 358, 361]. See 20 C.F.R. §§ 404.1520a, 416.920a (stating that the existence and severity of a mental impairment is determined by medical evidence consisting of signs, symptoms, and laboratory findings); Ferrando v. Comm'r of Soc. Sec. Admin. 2011 WL 3893801, 2 n.2 (9th Cir. 2011) ("[M]ental health professionals frequently rely on the combination of their observations and the patient's reports of symptoms (as do all doctors) . . . . To allow an ALJ to discredit a mental health professional's opinion solely because it is based to a significant degree on a patient's 'subjective allegations' is to allow an end-run around our rules for evaluating medical opinions for the entire category of psychological disorders."); see also Regennitter v. Comm'r Soc. Sec. Admin., 166 F.3d 1294, 1300 (9th Cir.1999) ( holding that the ALJ erred in rejecting an examining psychologist's opinion on the grounds that it was inconsistent with the "benign" results of a mental examination and accepted the claimant's subjective symptoms "at face value" where examination reports contained no "indication that [the claimant] was malingering or deceptive").

Additionally, the ALJ concluded that Dr. Joseph's report was internally inconsistent because she found that plaintiff had no impairment in his ability to maintain regular attendance yet was severely impaired in his ability to complete a normal workday or work week without interruptions resulting from psychiatric conditions. The ALJ overstated the degree of any inconsistency and essentially conflated two related, but not identical, work- related functional abilities. Attendance at work is defined as "[t]he action or state of going regularly to or being present at" work. Oxford Living Dictionaries, English, attendance (Oxford University Press 2017), available at https://en.oxforddictionaries.com (last visited Aug. 8, 2017). A person who is severely limited in the ability to *"complete"* a normal workday or work week due to

symptom-based interruptions is not necessarily unable to maintain regular attendance. However, common experience suggests that those two abilities are related and that a severe limitation in the ability to complete a normal workday or work week would likely affect work attendance. Accordingly, the ALJ erred in discrediting Dr. Joseph's opinion on the basis of a purported inconsistency without further development of the record as to the existence and degree of any inconsistency between these two distinct, but related, functional abilities. Cf. Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir.1996) ( "Where the purported existence of an inconsistency is squarely contradicted by the record, it may not serve as the basis for the rejection of an examining physician's conclusions.").

The ALJ also reasoned that Dr. Joseph's finding of a severe limitation was inconsistent with the Global Assessment of Function ("GAF") score of 57 that she assessed. [See AR 23]. A GAF score of 57 indicates the presence of moderate symptoms or any moderate difficulty in social, occupational, or school functioning. See Garrison v. Colvin, 759 F.3d 995, 1003 n. 4 (9th Cir. 2014). A GAF score is a merely "rough estimate" of an individual's functioning and is "used to reflect the individual's need for treatment." Garrison, 759 F.3d at 1003 n. 4 (quoting Vargas v. Lambert, 159 F.3d 1161, 1164 n. 2 (9th Cir. 1998)). Since Dr. Joseph found only one "severe" limitation, a GAF score in the moderate range was an appropriate "rough estimate." That GAF score was not a precise measurement that conflicts with the specific, function-by-function assessment that Dr. Joseph prepared for social security disability purposes. See Garrison, 759 F.3d at 1003 n. 4 ("Although GAF scores, standing alone, do not control determinations of whether a person's mental impairments rise to the level of a disability (or interact with physical impairments to create a disability), they may be a useful measurement. We note, however, that GAF scores are typically assessed in controlled, clinical settings that may differ from work environments in important respects.").

Another reason given by the ALJ for giving Dr. Joseph's opinion less weight was that she had not had the opportunity to review Exhibit 4F, which contained treatment reports from the Loma Linda VA that post-dated her May 2015 examination and showed plaintiff "responding relatively well to treatment before discontinuing treatment." [AR 23]. Exhibit 4F contains Loma Linda VA treatment reports from August 2013 through October 2015, including psychotherapy progress notes through May 28, 2015. [AR 366-467]. Although Dr. Joseph did not have Exhibit 4F in the record before her, she had Exhibit 2F, which contains Loma Linda VA treatment notes from August 2013 through March 2015, including psychotherapy progress

notes through March 5, 2015. [See AR 280-357].

The additional records in Exhibit 4F do not warrant the conclusion that plaintiff's condition improved significantly with the treatment he received after March 2015. Most importantly, plaintiff remained 100% disabled due to his service-connected mental impairment under VA disability standards during that entire period. See McCartey, 298 F.3d at 1076 (noting and discussing "the marked similarity between" the VA and social security disability programs). Plaintiff's primary diagnosis of PTSD was unchanged. Psychotherapy progress notes state that plaintiff was still attempting to understand and change his "avoidant," "isolative," and "maladaptive" behaviors. He "continued to struggle with his thought process regarding his behaviors that are undermining his goals of becoming 'normal' again," and his progress in therapy had been "slow." [See AR 396, 398, 399]. Plaintiff gave an interim history of receiving Bs and Cs in his college classes. He said that he had daily flashbacks, experienced nightmares three times a week, had restless sleep, and had cried a few times during the prior month. [AR 400]. Nothing in those additional VA treatment notes undermines Dr. Joseph's opinion or suggests significant improvement in plaintiff's mental condition. See Ghanim v. Colvin, 763 F.3d 1154, 1161–1162 (9th Cir. 2014) (holding that no conflict existed between treatment notes and a treating source's opinion where those notes "consistently reflect[ed]" symptoms of "ongoing depression and auditory hallucinations, difficulty sleeping, nightmares, and memory loss," even though the notes also "record[ed] some improved mood and energy level" because such observations must be "read in contest of the overall diagnostic picture . . . . The fact that a person suffering from depression makes some improvement does not mean that the person's impairment no longer seriously affects his ability to function in a workplace") (internal citation, quotation marks, and brackets omitted).

The ALJ also concluded that Dr. Joseph's May 2015 examination report was ambiguous as to whether or not plaintiff told her that he was attending community college at the time of her examination. [AR 23]. Under "Educational History" Dr. Joseph wrote that plaintiff had "attended one and one-half years of college," which was accurate because plaintiff started attending community college about a year and a half earlier. Under "Activities of Daily Living," however, Dr. Joseph did not mention current school attendance. [AR 40, 43, 360-361]. There is some ambiguity in Dr. Joseph's report as to whether or not she was aware that plaintiff was currently attending school, as he reported to a VA doctor around the same time. [See AR 40-47, 398]. However, the ALJ was not free to exploit that ambiguity to discredit Dr. Joseph

7

without attempting to obtain clarification from Dr. Joseph or taking other steps to the develop the record further. See Smolen v. Chater, 81 F.3d 1273, 1288 (9th Cir. 1996) (holding that where the ALJ did not know the basis for a treating source's opinion and thought that it "might have been based on unwarranted assumptions," the ALJ could not reject that opinion without developing the record further regarding the physician's basis for that opinion). Moreover, even if Dr. Joseph did not realize that plaintiff was in school on the date of her examination, it is not clear that her opinion would have changed materially had she known the details of plaintiff's school attendance, which he described during his testimony. [See AR 40-47]. Therefore, this ambiguity is Dr. Joseph's report, without more, was not a legitimate reason for rejecting Dr. Joseph's opinion, which was the only treating or examining source opinion from a non-VA provider and which was most consistent with plaintiff's VA disability rating.

The ALJ's reasons for rejecting Dr. Joseph's opinion were not specific, legitimate, and supported by substantial evidence in the record.

**Remedy**

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. McCartey, 298 F.3d at 1076-1077. The court's decision generally turns on the utility of further proceedings. Harman v. Apfel, 211 F.3d 1172, 1178-1179 (9th Cir. 2000). The Ninth Circuit has observed that "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)).

///
///
///

In this case, a remand for further administrative proceedings is the proper remedy because Dr. Joseph's opinion contains some unresolved ambiguity and inconsistency. On remand, the Commissioner shall direct the ALJ to fully and fairly develop the record and to issue a new decision containing appropriate findings.[2]

### Conclusion

The Commissioner's decision is not based on substantial evidence in the record and is not free of legal error. Accordingly, the Commissioner's decision is **reversed**, and this case is **remanded** to the Commissioner for further administrative proceedings consistent with this memorandum of decision.

**IT IS SO ORDERED.**

August 8, 2017



_____
ANDREW J. WISTRICH
United States Magistrate Judge

---

[2] It is unnecessary to separately consider plaintiff's contention that the ALJ improperly weighed his subjective allegations because the the ALJ's evaluation of plaintiff's subjective symptom testimony relies in part on his defective evaluation of the medical opinion evidence. On remand, the ALJ shall carefully reconsider the issue of plaintiff's subjective testimony and make appropriate findings.